**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

_____

IN RE:
JOSE SOUZA,                                          Chapter 7
     DEBTOR.                                   Case No. 14-10251-WCH


_____


ALUISIO SANTOS AND
ANDERSON L. ABREU,
     PLAINTIFFS,


v.                                                   Adversary Proceeding
                                                     Case No. 14-01059

JOSE SOUZA,
     DEFENDANT.


_____


**MEMORANDUM OF DECISION**

## I. <u>INTRODUCTION</u>

The matters before the Court are the "Plaintiffs' Motion for Summary Judgment," (the

"Motion for Summary Judgment") filed by Aluisio Santos ("Santos") and Anderson L. Abreu

("Abreu") (collectively, the "Plaintiffs"), and the "Defendant's Opposition to Plaintiff's Motion

for Summary Judgment and Cross-Motion for Summary Judgment," (the "Cross-Motion for

Summary Judgment") filed by the debtor, Jose Souza (the "Debtor"), also known as Jose de

Souza.  Through their motion, the Plaintiffs seek a determination that a debt owed to them is

excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6).  For the reasons set

forth below, I will enter an order denying the Plaintiffs' Motion for Summary Judgment and

denying in part and granting in part the Debtor's Cross-Motion for Summary Judgment.

## II. <u>BACKGROUND</u>

The facts, which were the subject of litigation in the Middlesex County Superior Court, are not in dispute.  Both parties submitted a "Memorandum, Findings of Fact, and Conclusions of Law With Respect to Claims Under Mass [sic] G.L.c.93A" (the "Memorandum") setting forth the Superior Court's judgment with respect to Mass. Gen. Laws ch. 93A ("93A") in the lawsuit the Plaintiffs filed against the Debtor.  The parties also submitted a completed special jury verdict form (the "Verdict") presenting the jury's findings with respect to the Plaintiffs' claims for  fraudulent and negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing.

In 1999, the Debtor arrived in the United States from Brazil. On July 8, 2002, he incorporated Ingles Wisdom Conversacao, Inc. (the "Corporation").  The Debtor formed the Corporation to operate foreign language schools.  He opened schools in Quincy, Somerville, Hyannis, and Framingham.  He intended to franchise the schools.

In 2004, the Debtor and Santos entered into discussions for the sale of a franchise to Santos.  The Debtor provided Santos with a document entitled "Costs and Profits to Open a Wisdom Franchise" (the "Description Document").  The Description Document provided estimates of operating expenses, revenue, and profits.  The Description Document listed the cost of the franchise as $30,000, payable in three $10,000 installments.  On October 5, 2004, the Corporation and Santos entered into a written contract granting Santos a franchise in Marlborough in exchange for $35,000.  Neither the contract nor any other writing granted Santos an exclusive territory in Marlborough.  The contract also required Santos to pay a $700 monthly royalty fee to the Corporation.  At some point, the Debtor indicated to Santos that he could

expect to make a profit of $100,000 per year. Santos never received any historical financial information for the Debtor or the Corporation. None of the parties retained legal counsel.

Santos began operating the school in Marlborough. According to a language instructor Santos hired, the Corporation provided defective instructional materials and did not provide any training. Regardless, the number of students at the Marlborough school grew for several months, but then declined.

In 2005, despite the defective instructional materials and lack of training, Santos agreed to pay an additional $10,000 each to open franchises in Shrewsbury and Milford. Santos purportedly again agreed to pay $700 per month in royalty fees, but the Superior Court found no documentation of any royalty fee payments made.

Santos and the Debtor orally agreed to provide ESL instruction through a federal government program allowing foreign students to apply for a visa while studying at a qualified educational institution (the "I-20 Program").[1] The parties used a separate Debtor-owned entity, Target International Student Center ("Target"), for this purpose. I-20 Program students at Santos' Marlborough school paid tuition to Santos, who kept 95% of the payments. Presumably, the Debtor retained the remaining 5%, but that information is not in the record.

In February 2007, the Debtor unilaterally and abruptly closed Santos' Marlborough school, alleging Santos overcharged students in the I-20 Program. According to the Memorandum, these accusations, if true, could have resulted in the loss of Target's certification

---

[1] The formal name of this program is not provided in the Memorandum, which refers to it as an "I-20 license." *See* Mot. Filed by Pls. Anderson L. Abreu, Aluisio Santos for Summ. J., Docket No. 14, Ex. B, at 4. It appears that Santos and Sousa obtained a certification from U.S. Immigration and Customs Enforcement's Student and Exchange Visitor Program. *See* STUDENT VISA, http://travel.state.gov/content/visas/english/study-exchange/student.html (last visited November 3, 2014) and INITIAL FORM I-17 PETITION FREQUENTLY ASKED QUESTIONS, http://www.ice.gov/sevis/i17 (last visited November 3, 2014).

from the federal government to participate in the I-20 Program.  As a result of the closure, Santos lost investments he had made in upgrading the Marlborough school.

In 2004, Abreu, a student at the Corporation's Framingham school, entered into discussions with the Debtor to purchase the Framingham school as a franchise.  The Debtor provided Abreu with the Description Document.  The Debtor did not provide Abreu with any historical financial information.  Nevertheless, he told Abreu that the franchise would be worth $100,000 within a year.

On October 1, 2005, Abreu and the Corporation entered into an agreement in Portuguese granting Abreu a franchise in the Framingham school.  None of the parties were represented by legal counsel.  On February 20, 2006, the parties signed an agreement in English, which they testified before the Superior Court contained the same language as the Portuguese document. Abreu testified that the price was $60,000, payable in installments, but neither document memorialized the price or the payment terms.  As will be explained below, the Debtor later declared a default before the full amount was paid, such that Abreu only paid $77,500 to the Debtor.

Abreu moved the Framingham school to a new location with the Debtor's permission and invested $30,000 to rent and refurbish the new location.  According to the Memorandum, Abreu had difficulty obtaining some instructional materials from the Corporation and received little or no training.  In December 2005, the Corporation stopped its advertising campaign on Abreu's behalf.

In March 2006, the Debtor declared Abreu in default for failure to pay rent and other expenses.  On March 20, 2006, the Debtor and Abreu signed a document stating that Abreu gave the Debtor checks totaling $7,006.70 and transferred ownership of the Framingham school back

to the Debtor.  Thus, Abreu's franchise was terminated after approximately six months.  The document further stated that the Debtor would return to Abreu "all the investments that he made less all expenses that I paid when I take [sic] responsibility of the business."[2]  Ultimately, the Debtor paid the rent and other past-due expenses for the Framingham location, but did not pay any money to Abreu.

The Plaintiffs subsequently brought an action in Superior Court against the Debtor, the Corporation, and Target (collectively, the "Defendants").  The Plaintiffs alleged fraudulent and negligent misrepresentation, breach of contract, violation of the implied covenant of good faith and fair dealing, and unfair and deceptive acts in violation of 93A.  On March 28, 2011, a jury trial commenced on all of the claims except the 93A claim, which the court reserved for decision.

On April 1, 2011, the jury rendered its Verdict.  According to the Verdict, the Defendants misrepresented an important fact or facts to the Plaintiffs in connection with the franchises.  The jury also determined that the Debtor breached a contract with the Plaintiffs and breached the implied covenant of good faith and fair dealing.  The jury awarded damages of: (1) $120,000 against the Corporation and the Debtor in favor of Santos; (2) $30,000 against Target and the Debtor in favor of Santos; and (3) $52,500 against the Corporation and the Debtor in favor of Abreu.

On May 24, 2011, the Superior Court entered the Memorandum with respect to the 93A claim.  The Superior Court determined that the Debtor, acting for the Corporation, failed to make disclosures and otherwise comply with Federal Trade Commission ("FTC") regulations for the sale of franchises.[3]  The Superior Court acknowledged that the Debtor, as a non-native English

---

[2] *See* Opp'n to Pls.' Mot. for Summ. J., Docket No. 20, Ex. B at 6-7.

[3] *See* 16 C.F.R. §§ 436.1-436.11 (2014).

speaker who was unrepresented by counsel, likely had no knowledge of the regulations, but held

that did not release the Debtor and the Corporation from the obligation of complying with them.

The Superior Court held "[b]ased upon the failure to disclose the information required by the

FTC regulations, alone . . . [the Debtor and the Corporation] committed unfair and deceptive acts

or practices in connection with the sale of the Wisdom franchises to Santos and Abreu."   The

Superior Court also held that the Debtor's termination of the oral agreement with Santos

concerning the I-20 Program was an unfair act pursuant to 93A.

The Superior Court declined, however, to find that the Debtor's conduct was a "willful or

knowing" violation of 93A.   The Superior Court held that the Debtor's actions were merely

"negligent with respect to his obligations as a franchisor and aggressive with respect to dealing

with Santos regarding the I-20 . . . school."[4]   Indeed, "[i]n the rough and tumble of the business

world, [the Debtor] was not intentionally acting deceptively or unfairly."[5]   Accordingly, the

Superior Court did not award the Plaintiffs multiple damages for the violation of 93A.

On January 25, 2014, the Debtor filed a Chapter 7 petition.   The Plaintiffs filed the

present adversary proceeding on March 5, 2014.   In the "Background and Facts" section of the

Complaint, they describe their Superior Court victory, and they claim that the Debtor

subsequently hid funds in Brazil rather than paying the Plaintiff's judgment.   The Plaintiffs filed

their Motion for Summary Judgment on August 21, 2014.   The Debtor filed his Cross-Motion for

Summary Judgment on September 7, 2014.   I held a hearing on both motions on October 1,

2014, and, at its conclusion, took the Matter under advisement.

---

[4] Opp'n to Pls.' Mot. for Summ. J., Docket No. 20, Ex. B at 12.

[5] *Id.*

## III. <u>POSITIONS OF THE PARTIES</u>

### A.  <u>The Plaintiffs</u>

In their Motion for Summary Judgment, the Plaintiffs re-state facts contained in their Complaint and argue that collateral estoppel, also known as issue preclusion, applies to the Superior Court's findings of fact and its holding that the Debtor made misrepresentations, breached contracts, and breached implied covenants of good faith and fair dealing.  They allege that Santos' damages total $150,000 and Abreu's total $52,500.  The Plaintiffs believe that the Superior Court judgment alone necessitates a ruling that the damages awarded to the Plaintiffs are not dischargeable.  Accordingly, the Plaintiffs request that I grant summary judgment in their favor.

### B.  <u>The Debtor</u>

In his Cross-Motion for Summary Judgment, the Debtor concedes that the jury found that he misrepresented an important fact, which caused damage to the Plaintiffs, and that he breached contracts and covenants of good faith and fair dealing with the Plaintiffs.  He also states that although the Superior Court found he violated 93A, it found he did not violate 93A willfully or knowingly.  Therefore, the Debtor asserts, the Superior Court's conclusion that he did not willfully or knowingly violate 93A demonstrates that he did not act with scienter.

The Debtor agrees with the Plaintiffs that collateral estoppel applies to the Superior Court's findings of facts.  He disputes, however, that collateral estoppel applies to the Superior Court's conclusions of law.  He argues that the standards for nondischargeability in 11 U.S.C. § 523(a)(2), (4), and (6) are different from the standards for the Plaintiffs' state law claims and, therefore, the conclusions of law do not have preclusive effect.  He further argues that viewing the facts the Superior Court found through the lens of 11 U.S.C. §§ 523(a)(2), (4), and (6) reveals

that the requirements for nondischargeability under those sections of the Bankruptcy Code have

not been met.  Thus, the Debtor argues, I should grant summary judgment in his favor.

## IV. <u>DISCUSSION</u>

From the outset, a few words are necessary to clarify the scope of this adversary

proceeding and the matters now before me.  In their Complaint, the Plaintiffs list 11 U.S.C. §§

523(a)(2), (4), and (6) as jurisdictional bases.  The Complaint, however, contains only two

counts.  The first is listed as arising under "§523(a)(3)," but the allegations of that count track the

language of 11 U.S.C. § 523(a)(2), so I will view the reference to 11 U.S.C. § 523(a)(3) as

simply typographical error.[6]  The second count is listed as being brought pursuant to 11 U.S.C. §

523(a)(11), which applies to debts arising from "an act of fraud or defalcation while acting in a

fiduciary capacity with respect to any depositary institution or insured credit union."[7]  I further

note that there is also a single statement at the end of the "Background and Facts" section of the

Complaint requesting the denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A)

without any support or elaboration.

Turning to the present motions, the Plaintiffs nakedly assert in their Motion for Summary

Judgment that "a case has been stated under . . . Section 523(a)(2)(4) [sic] and (6) of Title 11,"[8]

but the memorandum only argues the merits of 11 U.S.C. § 523(a)(2).[9]  There is no reference to

11 U.S.C. §§ 523(a)(11) or 727(a)(4)(A).  Similarly, the Debtor seeks summary judgment with

respect to the Plaintiffs' claims of non-dischargeability pursuant to 11 U.S.C. §§ 523(a)(2), (4),

---

[6] I note that the Debtor appears to have done the same in his pleadings.

[7] 11 U.S.C. § 523(a)(11).

[8] Mem. in Supp. of Pls.' Mot. for Summ. J., Docket No. 14 at 2.

[9] *Id.* at 5.

and (6).  In light of the Debtor's Cross-Motion for Summary Judgment and the arguments raised

therein, I will assume for present purposes that the Complaint contains claims under 11 U.S.C.

§§ 523(a)(4) and (6).

A. <u>The Summary Judgment Standard</u>

A court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10]  A

dispute is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of

the non-moving party.[11]  A fact is material if it has the potential to determine the outcome of the

suit under the governing law.[12]  The moving party bears the initial burden of demonstrating that

"the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

is no genuine issue as to any material fact."[13]  Additionally, the moving party must produce

evidence sufficient to meet "the substantive evidentiary standard of proof that would apply at the

trial on the merits."[14]  "[T]he mere existence of a scintilla of evidence will be insufficient."[15]

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment . . . against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial."[16]  The Supreme

Court has held "[there is] no express or implied requirement . . . that the moving party support its

---

[10] Fed. R. Civ. P. 56(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[12] *Id.*

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[14] *Anderson*, 477 U.S. at 252.

[15] *Id.*

[16] *Celotex*, 477 U.S. 317 at 322.

motion with . . . materials *negating* the opponent's claim."[17]  "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56."[18]

### B. Collateral Estoppel

Both parties seek summary judgment on the basis of collateral estoppel.  Collateral estoppel, or issue preclusion, bars re-litigation of either a factual or legal issue that was actually decided in previous litigation between the parties, whether on the same claim or a different claim.[19]  The Supreme Court has held that collateral estoppel applies to non-dischargeability actions in bankruptcy cases.[20]

When determining whether a party is estopped from re-litigating an issue decided in a prior state court action, a bankruptcy court must look at that state's law of collateral estoppel.[21] Under Massachusetts law, for collateral estoppel to apply, a court must determine that:

> (1) there was a valid and final judgment on the merits; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior litigation; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue in the prior litigation was essential to the earlier judgment."[22]

---

[17] *Id.* at 323 (emphasis in original).

[18] *Ferguson v. Gen. Star Indem. Co.*, 582 F. Supp. 2d 91, 98 (D. Mass. 2008) (quoting *Dan Barclay Inc., v. Stewart & Stevenson Servs., Inc.*, 761 F. Supp. 194, 197-98 (D. Mass. 1991)).

[19] *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994) (*quoting* Restatement (Second) of Judgments, § 27 (1982)).

[20] *See Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

[21] *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 33 (1st Cir. 2001).

[22] *Backlund v. Stanley-Snow (In re Stanley-Snow)*, 405 B.R. 11, 18 (B.A.P. 1st Cir. 2009).

The guiding principle in determining if collateral estoppel applies is whether the party against whom it is asserted had a "full and fair opportunity to litigate the issue in the first action or whether other circumstances justify affording him an opportunity to relitigate the issue."[23]

Here, it is undisputed that the Superior Court entered a valid and final judgment on the merits.[24]    Furthermore, the parties to the Superior Court action were identical.    Thus, the preclusive effect of the Superior Court judgment depends on whether the issues in that litigation were identical to the issues presented in this proceeding and whether those issues were essential to the Superior Court's judgment.    Determining if those two elements are satisfied requires a separate inquiry for each of the Plaintiffs' causes of action.

C.    11 U.S.C. § 523(a)(2)(A)

Pursuant to 11 U.S.C. § 523(a)(2)(A), a debt is non-dischargeable to the extent it was obtained by "false pretenses, a false representation, or actual fraud."[25]    The United States Court of Appeals for the First Circuit established a test to determine non-dischargeability in *Palmacci v. Umpierrez*.[26]    A plaintiff must prove each of the six *Palmacci* requirements by a preponderance of the evidence.[27]    First, the debtor must have made a misrepresentation, meaning a knowingly false representation or one made in reckless disregard of the truth.[28]    Second, the debtor must have acted with the intent to deceive, also known as scienter.[29]    To prove scienter,

---

[23] *Id.* (citing *Treglia v. MacDonald*, 430 Mass. 237 (1999)).

[24] At the hearing on these motions, the Plaintiffs stated that the Superior Court's judgment in the case was appealed and affirmed, although, according to the Plaintiffs, the record was lost. *See* Tr., Docket No. 26 at 4.

[25] 11 U.S.C. § 523(a)(2)(A); *In re Stanley-Snow*, 405 B.R. at 21.

[26] *See Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997).

[27] *See id.* at 787.

[28] *Id.*

[29] *Id.*

the plaintiff must show "the maker of the misrepresentation '(a) knows or believes the matter is not as he represents it to be; (b) does not have the confidence in the accuracy of his representation that he states or implies; or (c) knows that he does not have the basis for his representation that he states or implies.'"[30] Third, the debtor must have intended to induce the creditor to rely on the false statement.[31] Fourth, the creditor must have actually relied on the misrepresentation.[32] Fifth, the creditor's reliance must have been justifiable.[33] "A person is justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'"[34] Sixth, and finally, the plaintiff's reliance on the false statement must have caused damage.[35]

### 1. The Jury Verdict

The Superior Court jury found that the Debtor was liable to the Plaintiffs for breach of contract. The Verdict merely included the question "Did defendant De Souza breach a contract with [plaintiff] concerning [the Corporation or Target]?" The jury answered in the affirmative with no elaboration. Breach of a contract alone is not sufficient to establish non-dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A).[36] Accordingly, the Debtor's breach of contract has no preclusive effect with regard to this claim of nondischargeability.

---

[30] *Id.* (quoting Restatement (Second) of Torts § 526 (1977)).

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Field v. Mans (In re Mans)*, 516 U.S. 59 (1995) (quoting Restatement (Second) of Torts § 540 (1976)).

[35] *See Palmacci*, 121 F.3d 781 at 787.

[36] *See LL Lifestyle Inc. v. Vidal (In re Vidal)*, No. 10-14071, 2012 WL 3907847, at * 17 (Bankr. E.D. Pa. Sept. 7, 2012) (citing *EDM Machine Sales v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003)); *Lerario v. Nardone (In re Nardone)*, No. 05-21490, 2008 WL 2705524, at *4 (Bankr. D. Mass. July 7, 2008)).

The Verdict similarly contained an affirmative answer to the question "Did defendant De Souza breach the covenant of good faith and fair dealing in connection with the contract?"  The covenant of good faith and fair dealing "pertains to *bad faith* in the performance of a contract, not its execution."[37]   Additionally, "the bad faith needed to support a claim for breach of the covenant of good faith and fair dealing is not coextensive with actual fraud."[38]  Furthermore, the breach of the implied covenant of good faith and fair dealing occurred *after* the Plaintiffs had relied on the false statements that encouraged them to purchase the franchises and make additional investments in them.  Thus, the requirements of breach of implied covenant of good faith and fair dealing are not identical to the requirements for non-dischargeability pursuant to 11 U.S.C. § 523(a)(2)(A).

Finally, the jury determined that the Debtor made misrepresentations to the Plaintiffs. The Verdict included the questions "Did the defendant misrepresent an important fact to [plaintiff] concerning [the Corporation or Target]?" and "Did defendant De Souza's misrepresentation cause any damages to be incurred by [plaintiff]?"  The jury responded "yes" to both questions.   Massachusetts law includes causes of action for both negligent misrepresentation and fraudulent misrepresentation, also known as intentional misrepresentation. A misrepresentation is fraudulent, or intentional, if:

> [T]he defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.[39]

---

[37] *In re Nardone* at *8 (emphasis in original).

[38] *Id.* at 8.

[39] *See Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8 (1982) (quoting *Barrett Assocs. v. Aronson*, 346 Mass. 150, 152 (1963)).

Negligent misrepresentation does not require intent to deceive the plaintiff or actual knowledge that the statement was false. The Supreme Judicial Court has described negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[40]

A plaintiff must show that the defendant could have discovered the information was false through "a modicum of diligence."[41] Additionally, the plaintiff must prove there was "a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment."[42]

The Verdict did not state whether the jury found the Debtor made a fraudulent misrepresentation, negligent misrepresentation, or both. The Memorandum merely noted that the Plaintiffs brought both causes of action. Without having the jury instructions before me, I cannot be sure of the jury's meaning. Nevertheless, the jury must have found that the Debtor's misrepresentation fit within at least one of those two causes of action. Collateral estoppel applies to common elements of fraudulent and negligent misrepresentation that are identical to a requirement of 11 U.S.C. § 523(a)(2)(A) and essential to the Superior Court judgment.

First, proving a debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) requires a false representation by the debtor, made either knowingly or in reckless disregard of the truth.

---

[40] *Nycal Corp. v. KPMG Peat Marwick LLP*, 426 Mass. 491, 496 (Mass. 1998) (quoting Restatement (Second) of Torts (1977) § 552).

[41] *See Zuckerman v. McDonald's Corp.*, 35 F. Supp. 2d 135, 144 (D. Mass. 1999) (quoting *Acushnet Fed. Credit Union v. Roderick*, 26 Mass. App. Ct. 604, 605 (1988)).

[42] *Ravosa v. Zais,* 40 Mass. App. Ct. 47, 52 (1996) (quoting *Zimmerman v. Kent,* 31 Mass. App. Ct. 72, 77 (1991)).

To find the Debtor liable for fraudulent misrepresentation, the jury would have had to determine the Debtor made a false representation with actual knowledge of its falsity.  To find him liable for negligent misrepresentation, the jury would have had to find he made the false representation in reckless disregard of the truth. Either way, the first requirement of § 523(a)(2)(A) is satisfied. A finding that the false representation was made knowingly or in reckless disregard of the truth was essential to the jury's determination and is essential in § 523(a)(2)(A).   Accordingly, collateral estoppel applies.

While intentional or fraudulent misrepresentation requires a defendant to have acted with intent, negligent misrepresentation does not. "An individual who makes negligent misrepresentations has honest intentions but has failed to exercise due care."[43]  If the jury found the Debtor made only a negligent misrepresentation, not a fraudulent misrepresentation, then the Debtor would not have possessed the scienter required pursuant to 11 U.S.C. § 523(a)(2)(A).[44] Without knowing which type of misrepresentation the jury found the Debtor made, I cannot ascertain if the issues were identical to the scienter 11 U.S.C. § 523(a)(2)(A) requires and essential to the jury's finding.  Thus, while the jury's finding of "misrepresentation" is entitled to preclusion, it is not sufficient for me to determine if the Debtor acted with scienter.

The third requirement of the *Palmacci* test is that the debtor must have intended to induce reliance on the false statement.  Fraudulent misrepresentation also requires that the defendant made a false statement "for the purpose of inducing the plaintiff to act thereon."[45]  Similarly, negligent misrepresentation requires the plaintiff to show that the defendant's false statement

---

[43] *Sound Techniques v. Hoffman*, 50 Mass. App. Ct. 425, 432-33 (2000).

[44] *See Palmacci*, 121 F.3d 781 at 787.

[45] *See Danca*, 385 Mass. at 8.

was made "to induce the plaintiff to act."[46]   Intention to induce reliance is a common element between these three causes of action. It is essential to a finding that a party is liable for either type of misrepresentation and that a debt is non-dischargeable.   Therefore, the jury's finding has preclusive effect as to the requirement of intention to induce the Plaintiffs' reliance.

Fourth, finding that a debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) requires actual reliance by the plaintiff.   A plaintiff alleging a fraudulent misrepresentation was made must have actually relied on the false statement.[47]   The same is true in a negligent misrepresentation action.[48]   Therefore, the jury must have found actual reliance.   Actual reliance is an identical and essential element of negligent misrepresentation, fraudulent misrepresentation, and non-dischargeability.   Accordingly, the jury's finding that the Plaintiffs actually relied on the false statements is entitled to preclusion.

Fifth, the *Palmacci* test requires that the plaintiff justifiably relied on the false statement. Reliance is justifiable "so long as the falsity of the representation is not obvious to someone of the plaintiff's knowledge and intelligence, even though an investigation would have disclosed the falsehood." [49]   Negligent misrepresentation also requires that the plaintiff justifiably relied on the false statement.[50]   To establish a fraudulent misrepresentation, a plaintiff who hears the false statement must show he "is justified in relying on its truth, although he might have ascertained

---

[46] *See Ravosa*, 40 Mass. App. Ct. at 52.

[47] *See Lafayette Graphics, Inc. v. D3H Associates, Inc.*, No. 902853B, 1996 WL 1186872,*2  (Sup. Ct. Mass. March 21, 1996) (citing *Barrett Assoc., Inc.*, 346 Mass.  at 512).

[48] *See Imprimis Investors, LLC v. KPMG Peat Marwick, LLP*, No. 995312BLS, 19 Mass. L. Rptr. 51, *5 (Sup. Ct. Mass. Feb. 14, 2005), *aff'd Imprimis Investors, LLC. v. KPMG Peat Marwick LLP,* 69 Mass. App. Ct. 218 (2007).
[49] *In re Mans*, 516 U.S. at 60.

[50] *See Nycal Corp.*, 426 Mass. at 496.

the falsity of the representation had he made an investigation."[51]  Thus, justifiable reliance is essential to each cause of action, and the jury must have found that the Plaintiffs justifiably relied on a false statement of the Debtor's to determine that the Debtor was liable for misrepresentation.  Therefore, I must also find that the requirement of justifiable reliance was satisfied.

Lastly, the Plaintiffs must show they incurred damages.  Negligent misrepresentation requires "a pecuniary loss."[52]  Fraudulent misrepresentation similarly requires that a plaintiff "acted upon [a false statement] to his damage."[53]  Given that this issue is identical between the state law causes of action and 11 U.S.C. § 523(a)(2)(A) and is essential to both, the jury's findings have preclusive effect.  Nevertheless, an allocation issue remains.  The Verdict does not indicate what portion of the damages were awarded for breach of contract, breach of the implied covenant of good faith and fair dealing, and misrepresentation.  When a jury does not allocate damages between claims that may satisfy the standard of nondischargeability in 11 U.S.C. § 523(a)(2)(A) and claims that do not, additional findings are required to determine what, if any, portion of the damages awarded is nondischargeable.[54]  Thus, the amount of damages that are potentially nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) must be determined at trial.

2. The Memorandum

The Superior Court reserved only the 93A claim for decision.  It explained its 93A decision in its Memorandum.  The Superior Court found that the Debtor committed an unfair or

---

[51] *See Kuwati Danish Computer Co. v. Digital Equip. Corp*, 438 Mass. 459, 467 (2003) (quoting Restatement (Second) of Torts § 540 (1938)).

[52] *See Nycal Corp.*, 426 Mass. at 496.

[53] *See Danca*, 385 Mass. at 7 (quoting *Barrett Assocs. v. Aronson*, 346 Mass. at 152).

[54] *See Spagnuolo v. Brooke-Petit*, 506 B.R. 1, 7-8 (D. Mass. 2014).

deceptive act when he failed to comply with the FTC regulations.  It also found that the Debtor

violated 93A but acted negligently, not willfully or knowingly, when he unilaterally terminated

the oral agreement regarding the I-20 students with Santos.   A violation of 93A is not

synonymous with fraud.[55]  Here, the Superior Court merely found that the Debtor's failure to

comply with FTC regulations was an unfair or deceptive act.  The failure to comply with the

regulations does not constitute "false pretenses, a false representation, or actual fraud."[56]

Therefore, the failure to comply with the FTC regulations has no relevance to the Plaintiff's 11

U.S.C. § 523(a)(2)(A) cause of action.  Because the alleged conduct underlying the 93A portion

of the judgment is based on acts that do not fall within 11 U.S.C. § 523(a)(2)(A), the Debtor is

entitled to judgment as to this part of the Plaintiff's claim as a matter of law.

    D.  <u>11 U.S.C. § 523(a)(2)(B)</u>

A debt may also be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) if the debt

was incurred using:

> A statement in writing . . . that is (i) materially false; (ii) respecting the
> debtor's . . . financial condition; (iii) on which the creditor . . . reasonably relied;
> and (iv) that the debtor caused to be made or published with the intent to
> deceive.[57]

Courts disagree as to the meaning of "financial condition."[58]  Some have adopted a narrow

definition, holding a statement respecting a debtor's financial condition is limited to "a balance

sheet and/or profit and loss statement or other accounting of an entity's overall financial health

---

[55] *See Stoehr v. Mohamed*, 244 F.3d 206, 209 (1st Cir. 2007); *In re Stanley-Snow*, 405 B.R. at 22.

[56] 11 U.S.C. § 523(a)(2)(A).
[57] 11 U.S.C. § 523(a)(2)(B).

[58] *See Sampson Lumber Co., Inc., v. Tucci (In re Tucci)*, 462 B.R. 278, 283 (Bankr. D. Mass. 2011); *Zimmerman v. Soderlund ( In re Soderlund)*, 197 B.R. 742, 745-46 (Bankr. D. Mass. 1996) (collecting cases).

and not a mere statement as to a single asset or liability."[59]  Other courts, adopting a broader

definition, have held that a "formal financial statement" is not required.[60]  Instead, the phrase

"financial condition" includes "any and all statements which bear upon the financial condition of

the . . . debtor."[61]  I have previously held that the narrow interpretation is correct.[62]

The Debtor gave both Santos and Abreu copies of the Description Document.  According

to the Memorandum, the Description Document included estimated operational expenses,

monthly revenues, and net profits.[63]  The Memorandum, however, also states that the Debtor

never provided the Plaintiffs with financial statements for the Corporation or any of its

franchises.[64]  The Memorandum further notes that both of the Plaintiffs testified that they did not

receive historical information that "would have been important to them in making a decision

about purchasing a franchise."[65]  The Verdict makes no mention of the Description Document or

any other financial information provided to the Plaintiffs.[66]  Although the Superior Court's

findings of fact with regard to the Description Documents have preclusive effect, they are

insufficient.  Neither the Description Document nor any other writings that the parties used to

facilitate the sales of the franchises are before the Court.  It is impossible to determine whether

---

[59] *See In re Tucci*, 462 B.R. at 283.

[60] *See Engler v. Van Steinburg,* 744 F.2d 1060, 1060-61 (4th Cir. 1984).

[61] *See Follo v. Morency*, 507 B.R. 421, 429 (D. Mass. 2014).

[62] *See In re Tucci*, 462 B.R. at 283.

[63] *See* Opp'n to Pls.' Mot. For Summ. J., Docket No. 20, Ex. B at  3.

[64] *See id.* at 10.

[65] *Id.*

[66] *See* Opp'n to Pls.' Mot. For Summ. J., Docket No. 20, Ex. A.

the writings constituted a statement of financial condition from the descriptions in the Memorandum.  Based on the little information that has been provided, it is doubtful.

Additionally, the Memorandum makes no mention of whether the estimated operational expenses, monthly revenues, and net profits in the Description Document were materially false. The Memorandum and Verdict are also silent as to whether the Plaintiffs reasonably relied on the Description Documents and whether the Debtor published the Description Document with  intent to deceive.  Therefore, genuine issues of material fact remain.  Summary judgment is denied for both the Plaintiffs and the Debtor.

E. 11 U.S.C. § 523(a)(4)

Pursuant to 11 U.S.C. § 523(a)(4), a debtor is not entitled to a discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[67]  The Plaintiffs included 11 U.S.C. § 523(a)(4) as a cause of action in their Complaint, but the Complaint is devoid of supporting allegations.  The Verdict and the Memorandum make no mention of the Debtor acting in a fiduciary capacity, embezzling, or committing larceny.  The misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing causes of action that are the subjects of the Verdict do not satisfy the elements of 11 U.S.C. § 523(a)(4).  The 93A claim in the Memorandum does not either.  Therefore, neither the Verdict nor the Memorandum have preclusive effect as to 11 U.S.C. § 523(a)(4).

In their Complaint, the Plaintiffs have not alleged any conduct beyond that described in the Verdict and Memorandum to support their 11 U.S.C. § 523(a)(4) cause of action.[68]  Thus,

---

[67] 11 U.S.C. § 523(a)(4).

[68] *See Celotex Corp.*, 477 U.S. at 322 (holding "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . .").

there is no allegation of a fiduciary relationship between the Debtor and the Plaintiffs, or any allegation that the Debtor embezzled or committed larceny.  Therefore, the Plaintiff's Motion for Summary Judgment as to 11 U.S.C. § 523(a)(4) is denied and the Debtor's Cross-Motion for Summary Judgment is granted.

F. 11 U.S.C. § 523(a)(6)

A debt may be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) if it is incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity."[69] The Supreme Court has held that the actor must have intended the injury, not just the act that led to it.[70]

The Superior Court judge stated in his Memorandum that the Debtor did not willfully or knowingly violate 93A.  In Massachusetts, "a willful violation includes a reckless violation."[71] In contrast, "under § 523(a)(6), only 'a debtor who intentionally acts in a manner he knows, or is substantially certain, will harm another may be considered to have intended the harm, and, therefore, to have acted willfully.'"[72]  Thus, "willfully or knowingly" is a less stringent standard than "willful and malicious."   Given that the Superior Court found that the Debtor did not act willfully or knowingly pursuant to 93A, I am precluded from finding that the Debtor's failure to comply with FTC regulations or his behavior toward Santos regarding the I-20 students caused willful and malicious injury to the Plaintiffs pursuant to 11 U.S.C. § 523(a)(6).

The Verdict makes no mention of whether the Debtor's breach of contract, breach of the implied covenant of good faith and fair dealing, or misrepresentations caused willful and

---

[69] 11 U.S.C. § 523(a)(6).

[70] *See Kawaauhau v. Geiger*, 523 U.S. 57, 57-58 (1998).

[71] *In re Swasey*, 488 B.R. 22, 44 (Bankr. D. Mass. 2013) (quoting 52 MICHAEL C. GILLERAN, LAW OF CHAPTER 93A, MASS. PRACTICE SERIES, § 11.9 (2011)).

[72] *Id.* (quoting *McAlister v. Slosberg* (*In re Slosberg*), 225 B.R. 9 (Bankr. D. Me. 1998)).

malicious injury to the Plaintiffs.  Therefore, a genuine issue of material fact remains.  Summary judgment as to 11 U.S.C. § 523(a)(6) is denied for both parties.

## V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order denying the Plaintiffs' Motion for Summary Judgment, granting the Debtor's Cross-Motion for Summary Judgment as to 11 U.S.C. § 523(a)(4) and denying the Debtor's Cross-Motion for Summary Judgment as to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), and (a)(6).  Collateral estoppel applies for all elements of 11 U.S.C. § 523(a)(2)(A) except scienter and the allocation of damages.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: December 22, 2014

Counsel Appearing:

    Evans J. Carter, Evans J. Carter, P.C., Framingham, MA,
        for the Plaintiffs
    Neil J. Berman, Somerville, MA,
        for the Debtor/Defendant